# A. B. VEUM, Respondent, v. O. H. STEFFERUD, as Sheriff, Appellant.

(196 N. W. 104.)

**Fraudulent conveyance — change of possession of grain sold and fraudulent intent in sale of grain held for jury.**

1. In a conversion action against the sheriff, brought by the purchaser from a judgment debtor of grain under a bill of sale executed before the judgment creditor seized the grain under an attachment, where the defense is that the sale was colorable and fraudulent, it is *held:*

That the question of whether there was a change of possession, within § 7221, Comp. Laws, 1913, is one of fact for the jury.

That a question of fraudulent intent is one of fact for the jury, under § 7223, Comp. Laws, 1913.

**Appeal and error — sufficiency of evidence cannot be challenged in absence of motion for directed verdict or for new trial.**

2. That the sufficiency of the evidence to support the verdict cannot be challenged on appeal in the absence of a motion for a directed verdict or for a new trial.

**Appeal and error — one asserting error in admission of evidence and misuse of exhibits must prepare record affirmatively showing it.**

3. That when error is asserted upon the admission in evidence and the alleged misuse in the argument to the jury of exhibits admitted under the discretionary power of the trial court, it is the duty of the person asserting such error to prepare and preserve a record from which such error affirmatively appears.

Opinion filed November 16, 1923.

Appeal and Error, 3 C. J. §§ 618 p. 718 n. 50; 746 p. 839 n. 40: 4 C. J. §§ 1660 p. 71 n. 96: 1669 p. 78 n. 40. Evidence, 22 C. J. § 535 p. 449 n. 35. Fraudulent Conveyances, 27 C. J. §§ 133 p. 483 n. 29; 305 p. 581 n. 89; 311 p. 585 n. 10; 786 p. 838 n. 90; 788 p. 841 n. 17.

---

Note.—(1) Requisite and sufficiency of change of possession on a sale of goods, see 12 R. C. L. 560, 849; 2 R. C. L. Supp. 1456, 1466; 5 R. C. L. Supp. 651.

(2) Rule that appellate court will not consider objection that evidence insufficient to support verdict in absence of motion for new trial, see 2 R. C. L. 99.

(3) Necessity of perpetuation of improper remarks of counsel in record, see note in 46 L.R.A. 646; 2 R. C. L. 139, 148; 1 R. C. L. Supp. 414; 4 R. C. L. Supp. 85; 5 R. C. L. Supp. 74.

Appeal from the District Court of Ward County, North Dakota, *Moellring,* J.

Affirmed.

*McGee & Goss,* for appellants.

"Ordinarily as between the parties a delivery is not essential to complete a sale, but as to creditors and subsequent bona fide purchasers a delivery of some kind is indispensable." 12 R. C. L. 565.

"Growing crops are subject to constructive delivery." Drinkwater v. Pake, 33 N. D. 190.

Hence under the plain words of the statute the alleged sale was presumptively fraudulent and void as against the creditors and the plaintiff was further required to establish that the sale "was made in good faith and without any intent to hinder, delay or defraud" any of such creditors. McDonald v. Fitzgerald, 42 N. D. 133, 171 N. W. 879; Godman v. Olson, 38 N. D. 360.

"What constitutes or excuses change of possession. Must be open and visible." 27 C. J. 579.

"When the crop is harvested it is the duty of the purchaser to take and retain the possession." Cochrane v. Johnson (Okla.) 194 Pac. 210.

*Palda & Aaker,* for respondent.

To review the sufficiency of the evidence to support the verdict, a motion for a directed verdict or for a new trial is necessary. Bailey v. Davis (N. D.) 193 N. W. 658.

A verdict substantially supported by the evidence will not be disturbed on appeal. Rittle v. Woodward, 31 N. D. 113, 153 N. W. 951; Atkin v. Johnson, 28 N. D. 205, 148 N. W. 535; Rickel v. Sherman, 34 N. D. 298, 158 N. W. 266; Blackorby v. Ginther, 34 N. D. 248, 158 N. W. 354.

Neither is any actual delivery necessary in case of a growing crop. Note to Grabow v. McCracken (Okla.) 23 L.R.A.(N.S.) 1218.

"The appellant contends in favor of reversal that the transfer of the crop from Bruce to plaintiff (O'Brien) was void under the statute of frauds. Growing crops are chattels not susceptible of manual delivery until harvested, and are not 'in the possession or under the control of the vendor,' within the meaning of the statute requiring immediate delivery and continued change of possession. Davis v. McFarland, 37

Cal. 634. When the crop was harvested it was the duty of the plaintiff (O'Brien) to take immediate possession of the grain, and to retain such possession. The evidence on the part of the plaintiff tended to show that Bruce did not live upon the land where the wheat was grown, but resided some six miles distant; was never at the situs of the wheat but once after the sale and exercised no control or dominion over it as owner. He also hauled away and sold for seed some 70 sacks. This was after the levy of the attachment but before it was served upon him. The sale passed the title to plaintiff without the delivery of possession. When it was harvested, plaintiff exercised such dominion over it as is usual in such cases. The ground upon which it was grown was, so far as appears, vacant and unoccupied. The brand upon the sacks was sufficient to notify the public of plaintiff's ownership. We attach little importance to the fact that plaintiff was working for Bruce. The evidence was sufficient to support the verdict and on the showing of plaintiff the contract was not void under the statute of frauds; appellants urge that the written transfer from Bruce to the plaintiff was a mortgage of a growing crop and not a sale. This contention has no support in the record and we need not discuss it." O'Brien v. Ballou, 116 Cal. 318, 48 Pac. 150; Rosenberg Bros. v. Ross, 6 Cal. App. 755, 93 Pac. 284; see also Petrie v. Wyman, 35 N. D. 126, 159 N. W. 616; Morrison v. Oium, 3 N. D. 76, 54 N. W. 288.

It will be observed that failure to comply with the statute regarding delivery and change of possession of personal property is not conclusive, but only presumptive, evidence of fraud. See Drinkwater v. Pake, 33 N. D. 190, 156 N. W. 930; Moores v. Tomlinson, 33 N. D. 638, 157 N. W. 685.

"We therefore hold that, as the debt for which the attaching creditor seized the property was a debt contracted before the execution and delivery of the mortgage, and while therefore, there was no default in filing it, and as it does not appear that the creditor after the giving of the mortgage and before it was filed, in any manner, altered his position to his detriment, the mortgage lien is paramount, even assuming that a valid levy was made before the mortgage was filed." Union Nat. Bank v. Oium, 3 N. D. 193, 44 Am. St. Rep. 533, 54 N. W. 1034.

JOHNSON, J. This is an action to recover the value of a quantity of

grain alleged to have been converted by the defendant. The defendant, as sheriff of McLean county, seized the grain under a warrant of attachment issued in an action in which the State Bank of York was plaintiff and one Albert W. Johnson was defendant. The case was submitted to a jury in Ward county and resulted in a verdict for the plaintiff in the sum of $1,004.42, with interest at 6 per cent, from September 27, 1920 to the date of the verdict.

Albert W. Johnson, the defendant in the attachment action, rented some land in McLean county, from the owner, a Mr. Myers, upon the crop share plan. Under contract of tenancy, Johnson put in the crop in the spring of 1920. The crop was in due season harvested and threshed and the wheat alleged to have been converted was put into a bin on the premises. Between five and six hundred bushels of wheat were seized by the defendant under a warrant of attachment on the 27th of September, 1920, a few days after the grain was threshed. Shortly thereafter, the plaintiff, Veum, made a third party claim to the crop in the manner provided by statute. The sheriff refused to recognize the validity of plaintiff's claim of ownership and the crop was sold and the proceeds were presumably delivered to the plaintiff in the attachment suit. Plaintiff thereupon brought this action to recover for the conversion of the grain, claiming the ownership thereof at the time of the levy.

The plaintiff's claim of ownership is based upon the transactions which culminated in the execution and delivery to him of a bill of sale, dated June 19, 1920, of A. W. Johnson's share in the crop that was then growing upon the premises rented by Johnson. There is evidence in the record which tends to show that Veum had advanced sums of money to Johnson from time to time; that on the 19th of June, when the bill of sale was made, Johnson was indebted to Veum to the amount of about $1,800; Veum then says that after the bill of sale was executed, he took possession of the crop and harvested the same; that he hired Johnson and other men to harvest the crop and paid for all the work himself, Johnson's labor included. Plaintiff further testified that he paid for the threshing of the crop. The testimony of Johnson is substantially to the same effect. The bill of sale was executed and delivered for the purpose of paying or of securing the indebtedness of Johnson to the plaintiff. The plaintiff does say, on cross-examination, that the bill of

sale was taken for security. The case was tried and submitted to the jury on the theory that the bill of sale evidenced a sale rather than a mortgage transaction. Appellant never suggested to the trial court that the instrument should be considered as a mortgage or gave the trial court an opportunity in any form to pass upon that question. Appellant asked for certain instructions, all of which were framed on the theory that the bill of sale was what it purported to be upon its face, evidence of an attempted transfer of title to certain property. He did not make a motion for a nonsuit, for a directed verdict, for judgment non obstante, or for a new trial. Counsel cannot now rely on a lien theory when the case was tried on the theory of a fraudulent sale. 3 C. J. 718.

The defendant challenges the claim of the plaintiff to the ownership of the crop or to any interest therein upon the ground that the transaction between the plaintiff and Johnson was merely colorable and entirely fraudulent and that the bill of sale was executed solely for the purpose of hindering, delaying or defrauding the creditors of Johnson; it is claimed that both plaintiff and Johnson were parties to this scheme. The bill of sale was not filed. There is evidence to the effect that Johnson did not live on the land he rented and on which the grain seized was grown at any time during 1920; that plaintiff himself assisted in threshing and caring for the grain; that the plaintiff received the proceeds of at least some of the wheat and the flax which was raised on the land; that Johnson told the deputy sheriff, at the time of the levy, that he was not the owner of the crop; and that 568 bushels of wheat were seized by the sheriff. The market value of the wheat was shown. The record shows that the debt on which the cause of action in the attachment suit was founded was contracted before the bill of sale was delivered on June 19, 1920.

The statutes relating to fraudulent transfers, so far as material to the present inquiry, are as follows:

Sec. 7220. "Every transfer of property or charge thereon made, every obligation incurred and every judicial proceeding taken with intent to delay or defraud any creditor or other person of his demands is void against all creditors of the debtor and their successors in interest and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

Sec. 7221. "Every sale made by a vendor of personal property in his possession or under his control and every assignment of personal property, unless the same is accompanied by an immediate delivery and followed by an actual and continued change of possession of the property sold or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor or assignor, or subsequent purchasers or incumbrancers in good faith and for value, unless those claiming under such sale or assignment make it appear that the same was made in good faith and without any intent to hinder, delay or defraud such creditors, purchasers or incumbrancers."

Sec. 7223. "In all cases arising under § 5599 or under the provisions of this chapter the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration."

The change of possession, contemplated in § 7221, supra, and necessary to avoid the presumption of fraud must generally and ordinarily be open and unequivocal and must have the usual characteristics and indications of ownership; it should be such as to indicate to the world the claims of the new owner; the possession should be continuous, tho it need not continue indefinitely; that is, there should not be present an intention to return the property; it must be substantial and not merely formal. Petrie v. Wyman, 35 N. D. 126, 159 N. W. 616; 20 Cyc. 545; Stevens v. Irwin, 15 Cal. 503, 76 Am. Dec. 500; O'Gara v. Lowry, 5 Mont. 427, 5 Pac. 583; Walters v. Ratliff, 10 Okla. 262, 61 Pac. 1070; Topping v. Lynch, 2 Robt. 484; Guthrie v. Carney, 19 Cal. App. 144, 124 Pac. 1045; O'Brien v. Ballou, 116 Cal. 318, 48 Pac. 130; Rosenberg Bros. & Co. v. Ross, 6 Cal. App. 755, 93 Pac. 284. See also MacDonald v. Fitzgerald, 42 N. D. 133, 171 N. W. 879.

Specifications two, four and five refer to the reception in evidence of the bill of sale and the third party claim. There is no merit to these assignments and indeed they are not seriously urged by the appellant. In specification three, appellant alleges error based upon a denial of his motion for a directed verdict at the close of the case. We find no such motion in the record. The transcript of the proceedings shows that both sides rested when the testimony had been taken without a motion to dismiss the case or direct a verdict. Neither did the defendant

and appellant make a motion for a new trial. The sufficiency of the evidence to support the verdict cannot be challenged in this court in the absence of a motion for a directed verdict or for a new trial. That has been the rule in this jurisdiction since the decision in Morris v. Minneapolis, St. P. & S. Ste. M. R. Co. 32 N. D. 366, 155 N. W. 861, construing § 7843, Comp. Laws 1913; Bailey v. Davis, 49 N. D. 838, 193 N. W. 658; Rokusek v. National Union F. Ins. Co. ante, 123, 195 N. W. 300. There remain for consideration, therefore, only two general assignments of errors, based upon the reception over objection of plaintiff's Exhibit 1, being the papers in the attachment suit which were served when the grain was seized by the sheriff, but particularly the attachment bond, which is a part of the exhibit, and certain instructions that were given and the refusal of the court to give requested instructions. We shall discuss these assignments in the order stated.

It is contended by counsel for the appellant that the attorney for the respondent, plaintiff below, misused the attachment bond, which was a part of Exhibit 1, and prejudiced the jury by suggesting to them that the defendant was protected by a surety bond. It may be that some part of the record, like the bond, is susceptible of misuse in the argument to the jury. That may be true of exhibits properly admitted in the course of any litigation. Counsel had the opportunity to protect himself against such misuse by timely objections and appeals to the trial court to confine the exhibit to its proper use and to restrain counsel from misuse thereof. There is nothing in the record before us upon which the finding could be predicated that the exhibit was misused by counsel for the respondent. There appear in the record parts of sentences and isolated sentences which were taken in the course of the argument by the reporter, but it also appears that the court admonished the counsellor to confine himself to the evidence. The record is wholly devoid of evidence of misconduct or prejudice resulting from the admission or use of this exhibit. We cannot order a reversal on this ground.

There is another fact that should not be overlooked in this connection. The bond which appellant alleges was improperly admitted and misused in the argument to the jury is the statutory attachment bond, by the terms of which the plaintiff in the attachment action agrees "that if the defendant recover judgment, or the attachment herein is set aside

by order of this court, the plaintiff will pay all costs that may be awarded to the defendant and all damages that the defendant may sustain, by reason of the attachment herein, not exceeding the sum of $1,-100." The bond indemnifies Albert W. Johnson, the defendant in the attachment suit, not Stefferud, the defendant in the case at bar. It is difficult to see how the jury could have interpreted this undertaking as a protection to the officer, appellant herein, when its indemnity provisions are, in plain terms, limited to Albert W. Johnson, the defendant in the attachment suit and a witness in the present action. The conclusion may be drawn from the isolated phrases and parts of sentences from the argument of respondent's counsel to the jury, incorporated in the record, that reference to this bond was made in the course of the argument, but the extent or the nature of the reference thereto does not sufficiently appear in the record to enable us to say that prejudicial error resulted from the admission of the exhibit and the use thereof by counsel. The exhibit was a part of the res gestæ and whether it should be received in evidence was, under the facts, discretionary with the trial court. Under the circumstances, it was incumbent upon the appellant to prepare and preserve a record from which the error he asserts affirmatively appears. We think he has failed in this regard. Erickson v. Wiper, 33 N. D. 193, p. 222, 157 N. W. 592.

Appellant's specifications of errors, numbered six to fifteen, inclusive, are based upon certain portions of the charge to the jury. In the instructions criticized, the court, in substance, told the jury that there was a dispute in the case as to whether the plaintiff was in possession at the time of the seizure of the grain; that the jury must find who was in possession; and that if the jury found that there was not an actual and continued change of possession and that Johnson, the defendant in the attachment proceedings, was in possession of the grain, the burden to prove the good faith of the transaction was upon the vendee, respondent herein; otherwise, the court said, the burden was on the defendant and appellant to show fraud. The court further charged, in the instructions criticized, that the change of possession must be substantial and of such character as the nature of the property permits; that if the jury believed the bill of sale was shown to be fraudulent, the verdict should be for the defendant. It is also complained that the court misplaced the burden of proof in this case, by, in substance, telling the

jury that the burden was upon the defendant to prove fraud when, in point of fact, there was no evidence of an immediate and continued charge of possession and that, therefore, the bill of sale was presumptively fraudulent and the burden on the plaintiff, not the defendant, to establish good faith. It is also alleged that the court erroneously advised the jury that if the jury found a verdict for the plaintiff, interest at 6 per cent might be added, because it is alleged that the plaintiff demanded the highest market price. This last mentioned objection is wholly without merit because, in the complaint, the plaintiff asks for interest at the rate of 6 per cent from the date of the conversion and does not ask for the highest intermediate market price.

It is not necessary to discuss these assignments at great length. The court correctly told the jury that the plaintiff had the burden of proof to establish, by the greater weight of evidence, the facts necessary to his cause of action; to do this, plaintiff introduced evidence tending to show that he purchased the grain from Johnson on the 19th of June, 1920, under a bill of sale, offered in evidence, and that he immediately took such possession as the circumstances permitted; that he hired the vendor and other persons to harvest the crop and thresh it and himself took part in the threshing operations; and that he received some of the proceeds of the crop. The defendant contends that the sale was fraudulent because there was no change of possession, and that there was no evidence of change of possession justifying the submission of that question to the jury. The court, we think, correctly assumed that there was a dispute in the evidence upon this question. There was evidence in the case from which the jury could find an immediate, as well as such an actual and continued change of possession as the character of the property and the circumstances permitted. Petric v. Wyman, 35 N. D. 126, 159 N. W. 616; Hood v. Gibson, 8 Kan. App. 588, 56 Pac. 148; 20 Cyc. 543, 545; O'Brien v. Ballou, 116 Cal. 318, 48 Pac. 130, note in 23 L.R.A.(N.S.) 1218; Rosenberg Bros. & Co. v. Ross, 6 Cal. App. 755, 93 Pac. 284. That being the situation, it was proper for the court to instruct upon the necessity of proving an immediate, actual and continued change of possession, and to say that, if the jury found that there was an immediate and continued change of possession, the burden to establish an intention to defraud creditors was upon the defendant. It was also proper to say, under the facts, as the court did,

that if the jury found that there was not an immediate, actual and continued change of possession, the bill of sale and the transfer was presumptively fraudulent and the burden was, in that event, upon the plaintiff to establish affirmatively good faith on his part in purchasing the grain. This instruction correctly and clearly placed the burden of proof. See Guild v. More, 32 N. D. 432, 464, 467, 155 N. W. 44. The fundamental fallacy of appellant's position in regard to these instructions lies in assuming that there was no evidence of an immediate, actual and continued change of possession which warranted instructions upon that question by the trial court.

The appellant complains of error because the court refused to give four instructions in the form requested by the appellant. The first requested instruction contained a peremptory statement to the jury that the bill of sale was fraudulent and that the burden was upon the plaintiff to prove that the transfer was not intended as a fraud on creditors. Manifestly, in view of the evidence, such a charge would have been erroneous. The second request was properly refused for the same reason. It likewise assumed that the bill of sale was fraudulent on the ground that there was no change of possession at the time of its execution. No error was committed in refusing the third request because the subject matter thereof was amply covered in other portions of the charge. The fourth requested instruction is likewise objectionable because there the court is asked to tell the jury that the burden is on the plaintiff to establish that the bill of sale was not fraudulent. There was dispute in the evidence and such an instruction would have been erroneous. There was no error in refusing defendant's and appellant's requests for instructions.

We are satisfied, from a careful reading of the charge and of the record, that the court gave clear and entirely correct instructions upon every point involved in the action. Counsel argues very strenuously that there are badges of fraud upon the transaction of purchase and sale which took place on June 19, 1920, between the respondent and the witness, Johnson, defendant in the attachment action. A badge of fraud, however, is generally but evidence of fraud, from which the triers of the facts may find the existence of fraudulent intent; all of the evidence, including the alleged badges of fraud, was before the jury under correct instructions as to the law and the verdict of the jury is

conclusive on this appeal. The existence of fraudulent intent is a question of fact. § 7223, supra. See 1 Bouvier's Law Dict. 304. Pilling v. Otis, 13 Wis. 495.

Judgment affirmed.

BRONSON, Ch. J., and CHRISTIANSON, BIRDZELL, and NUESSLE, JJ., concur.